UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **FREDD B. MITCHELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:24-cv-00930-GCS** |
| | ) | |
| **DENNIS A. GREGORY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Fredd B. Mitchell brings this civil rights action pursuant to 42 U.S.C. § 1983 for an alleged violation of his rights at Shawnee Correctional Center. (Doc. 1; Doc. 15). Mitchell alleges that Defendant Dennis A. Gregory used excessive force against him when he sprayed pepper spray into Mitchell's cell. Pending before the Court is a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendant Gregory. (Doc. 34). For the reasons explained below, the Court **DENIES** Defendant's Motion for Summary Judgment.

**PROCEDURAL BACKGROUND**

Plaintiff Mitchell filed this lawsuit on March 27, 2024. (Doc. 1) and filed an Amended Complaint on September 3, 2024. (Doc. 15). The Amended Complaint alleged that in the spring of 2023, Mitchell's cellmate attempted to hang himself with a sheet. *Id.* at p. 6. Defendant Gregory responded to the attempt and told Mitchell's cellmate to

remove the sheet from around his neck. *Id*. Mitchell's cellmate complied. *Id*. Gregory then opened the cell door and sprayed pepper spray into it, telling Mitchell's cellmate to remove the sheet from around his neck even though the cellmate had already done so. *Id*. Gregory deployed pepper spray directly into Mitchell's face even though his cellmate was complying and Gregory had not directed Mitchell to do anything. *Id*. Gregory then took Mitchell to a shower to rinse off the pepper spray. *Id*. Afterwards, Mitchell was escorted to Internal Affairs, where he provided an account of the incident. *Id*.

The Court completed a preliminary review of Mitchell's Amended Complaint pursuant to 28 U.S.C. § 1915A on October 31, 2024. (Doc. 20). Based on the above allegations, the Court allowed Mitchell to proceed on the following claim:

**Count 1:** **Eighth Amendment excessive force claim against Gregory for spraying pepper spray into Plaintiff's cell.**

(Doc. 20, p. 2, 4). On April 16, 2025, Defendant Gregory filed a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies ("Motion"). (Doc. 34). Mitchell filed a response ("Response") on May 12, 2025. (Doc. 39). The Court held an evidentiary hearing on the issue on April 27, 2026.[1] (Doc. 51). The Motion for Summary Judgment is now ripe for the Court's review.

---

1 The Supreme Court recently altered the Court's ability to conduct evidentiary hearings under *Pavey*. In *Perttu v. Richards*, 145 S.Ct. 1793 (2025), the Supreme Court held that if a factual dispute on exhaustion is intertwined with a factual dispute that goes to the merits of a plaintiff's underlying substantive claim, a jury trial is required on the intertwined issue. No such intertwinement issues are implicated here. Thus, *Perttu* does not affect this dismissal.

## FACTUAL BACKGROUND

There is one grievance in Mitchell's file that relates to the 2023 incident with Gregory. (Doc. 34, p. 5-6; Doc. 39, p. 3).

### A. Grievance No. 2023-292/2023-9-292[2]

Mitchell submitted Grievance No. 2023-9-292 to the Counselor at Shawnee Correctional Center on September 27, 2023. (Doc. 34-2, p. 4). Mitchell complained that, in March of 2023, Defendant Gregory sprayed pepper spray at both Mitchell and his cellmate even though Mitchell had not done anything wrong and his cellmate had already complied with Defendant Gregory's orders. *Id.* at p. 4-5. Mitchell expressed fear at what Defendant Gregory would do to him if he found out that Mitchell had filed a grievance about him. *Id.* at p. 4. Mitchell also explained why he took so long to file a grievance, *i.e.*, because he had not seen his cellmate since being put into segregated housing sometime in the intervening period. *Id*. at p. 5.

On October 2, 2023, the Grievance Counselor denied Mitchell's grievance because it did not include an incident date as required by 20 ILL. ADMIN. CODE § 504.810. (Doc. 34-2, p. 4). The Grievance Officer recommended denying the grievance on the same grounds and noted the grievance was not timely because it had not been filed within sixty days of the alleged incident. *Id.* at p. 1. The Chief Administrative Officer ("CAO") concurred on October 5, 2023. *Id*. Plaintiff then appealed to the Administrative Review

---

2 The initial grievance is numbered 2023-292, but all subsequent documents refer to it as 2023-9-292. The parties examined the grievance at the evidentiary hearing on April 27, 2026, and did not dispute its authenticity. (Doc. 54, p. 20-26). The Court will refer to the grievance as Grievance No. 2023-9-292.

Board ("ARB"). *Id*. The ARB received the grievance on October 27, 2023. (Doc. 34-3, p. 2). The ARB denied the grievance on November 13, 2023, because it was not submitted within the sixty-day timeframe required by Section 504.810 of the Illinois Administrative Code. *Id*.

**B. Alleged Lost/Missing Grievance**

Mitchell alleges that he filed a grievance on April 10, 2023, regarding the incident with Defendant Gregory, but the grievance had been thrown away or otherwise interfered with rather than processed. (Doc. 39, p. 3). This grievance would have been sufficient to exhaust Mitchell's administrative remedies against Gregory, but there is, of course, no record of the grievance. Mitchell has not pointed to evidence other than his own testimony that suggests he filed a grievance on April 10. In fact, while Mitchell testified that he filed Grievance No. 2023-9-292 because he did not get a response to the missing grievance, he did not remember whether he filed a grievance on April 10. (Doc. 54, p. 21-22, 27-28). When Gregory's counsel asked Mitchell why he did not mention a missing grievance when he filed Grievance No. 2023-9-292, Mitchell responded he did not know that it was important to include that information. *Id.* at p. 29. He also testified the prison C/Os "all ride together" and that they might dispose of grievances filed by inmates in segregated housing. *Id.* at p. 30-31.

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgement, the non-moving party must provide admissible evidence which

would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role is to determine whether a genuine issue of material fact exists rather than evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter when determining the outcome for a motion for summary judgement. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is left to the Court to determine whether an inmate has exhausted his or her remedies when the affirmative defense of non-exhaustion is raised. If the court finds that the inmate failed to exhaust administrative remedies, then the inmate is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent. *Id.* at 742. If the court determines that the failure to exhaust was the inmate's fault, then the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This coincides with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also*

*Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). It affords prison administrators an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

Inmates must follow their prison's administrative rules when attempting to exhaust their administrative remedies under the PLRA. *See Pozo*, 286 F.3d at 1023. Mitchell is an inmate in the IDOC and is required to correctly follow the regulations contained in the IDOC's Grievance Procedures to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the requirements for exhaustion under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement cannot be satisfied if an inmate files untimely or procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Additionally, an inmate must correctly complete all the steps outlined in the grievance procedures and is barred from filing suit prior to any step being completed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); 42 U.S.C. § 1997e(a). If an inmate fails to complete all the steps correctly to exhaust his claim, then "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. However, inmates are not required to exhaust administrative remedies that are unavailable to them which can occur if, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

Failure to exhaust administrative remedies is an affirmative defense. The party

asserting the defense bears the burden of proof; the burden is not on an inmate to show that administrative remedies were unavailable. *See Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023).

The IDOC Grievance Procedures require that an inmate first file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The Grievance must include, "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the counselor's response, then the inmate can submit a formal grievance to the prison's grievance officer. *Id* at (a)-(b). The grievance officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of the receipt of the grievance, the grievance officer must report their findings and recommendations in writing to the CAO. *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO will then review the findings and recommendations and offer a written decision to the inmate. *Id*. The inmate can appeal the CAO's decision to the ARB within 30 days. *See* 20 ILL. ADMIN. CODE § 504.850(a). To do this correctly, the inmate is required to attach copies of the grievance officer's report and the CAO's decision to his appeal. *Id*. The ARB then submits its findings and recommendations to the Director, who will issue the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)-(e).

## DISCUSSION

Before turning to exhaustion, the Court notes that Mitchell raises several issues in

his response to Defendant Gregory's Motion that he asserts give rise to genuine disputes of material fact. (Doc. 39, p. 4). These issues include whether a conditions-of-confinement claim constitutes a continuing violation and warrants relation back, as well as factual allegations concerning the incident that gave rise to this suit. *Id.* As to the first issue, Mitchell has an excessive force claim, not a conditions-of-confinement claim. (Doc. 20, p. 2-3). Regardless, what can amount to a continuing violation and whether it warrants relation back are questions of law, and all of the disputed issues go to the merits of the claim rather than exhaustion. Accordingly, the Court need not address them further.

**A. Grievance No. 2023-9-292 did not exhaust Mitchell's administrative remedies.**

Gregory moves for summary judgment because Mitchell failed to obtain a final decision on the merits of his grievance. (Doc. 34). Gregory contends that there was only one grievance that could have exhausted Mitchell's remedies against him, but that the grievance was untimely *Id*. at p. 5. Because the ARB did not review the grievance on the merits and instead rejected it for being filed out of time, Mitchell never received a final administrative decision on the matter and thus failed to exhaust his administrative remedies. *Id*. Mitchell's response to Defendant Gregory's motion does not address Grievance No. 2023-9-292. (Doc. 39). At the evidentiary hearing, Mitchell stated that he had, in fact, exhausted his administrative remedies because the grievance had been denied at every step of the process up through the ARB. (Doc. 54, p. 31). The Court does not agree.

To exhaust administrative remedies under the PLRA, an inmate must strictly comply with the rules that regulate the grievance process. *See Woodford*, 548 U.S. at 83;

*Dole*, 438 F.3d at 809; *see also Pozo*, 286 F.3d at 1025 (stating that "[t]o exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim. . . . these include time limits."). Two of the rules Plaintiff was required to follow were that he had to include an incident date and that he had to file a grievance within sixty days of discovering the incident that gave rise to the grievance. Grievance No. 2023-9-292 did not include an incident date and was filed well past sixty days after the incident with Defendant Gregory occurred. The grievance was denied at both the facility and ARB levels for those reasons. (Doc. 34-2, p. 1, 2; Doc. 34-3, p. 2). Because Mitchell did not follow the rules governing the grievance process in pursuing Grievance No. 2023-9-292, this grievance did not exhaust his administrative remedies against Defendant Gregory.

**B. Defendant failed to meet its burden of proof as to the alleged grievance filed by Mitchell on April 10, 2023.**

Exhaustion of administrative remedies is an affirmative defense for which Gregory bears the burden of proof. *See Bauer v. J.B. Hunt Transport, Inc.*, 150 F.3d 759, 763 (7th Cir. 1998). At the summary judgment stage, Gregory must show that, even taking all facts and reasonable inferences in Mitchell's favor, there is no genuine dispute as to whether Mitchell exhausted the administrative remedies that were available to him. The moving party may succeed by showing an absence of evidence to support a non-moving party's claim. *See Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020) (citing *Parkey v. Sample*, 623 F.3d 1163, 1165 (7th Cir. 2010) (internal citation omitted)). The Court finds that Gregory has not carried this burden.

As noted above, Gregory alleges there is only one grievance relevant to this case.

Mitchell disputes this assertion, alleging that he had filed a grievance against Gregory on April 10, 2023, but the grievance was disposed of before it was processed. Mitchell offers little additional detail as to this missing grievance. In his Response, he explains that he filed Grievance No. 2023-9-292 after he realized that the April 10 grievance had been disposed of. (Doc. 39, p. 3). At the evidentiary hearing, however, he said that he did not remember whether he filed that grievance or not and that corrections officers threw away grievances filed by inmates in segregated housing (like the April grievance). (Doc. 54, p. 21-22, 31-32). While these allegations are somewhat muddied, they are not contradictory and insufficient to call Plaintiff's allegations into doubt. As such, Plaintiff's assertions that he filed a grievance on April 10, 2023, that it was thrown away, and that his administrative remedies were not available to him stand uncontradicted.

Gregory's arguments at the evidentiary hearing focused largely on whether there was a record of the grievance that Mitchell allegedly filed on April 10, 2023. A grievance counselor and a member of the ARB testified that they had no record of the grievance. But that testimony does not rebut, contradict, or even address Mitchell's claim. Mitchell alleges the grievance was thrown away before it was put into the system — if that is the case, then there would be no record of the grievance. Nor did Gregory present any evidence from witnesses who could speak to what might have happened to the grievance on April 10, 2023, such as the corrections officer who was responsible for collecting the grievance from Mitchell on the day in question. Without any such evidence, this leaves the Plaintiff's allegations regarding this grievance unchallenged. Because Gregory did not meet his required burden of proof on exhaustion, summary judgment is precluded.

## CONCLUSION

For the reasons explained above, the Court **DENIES** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

**DATED: September 2, 2026.**

Digitally signed by Judge Sison
Date: 2026.09.02 14:38:38 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**